UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                   :

UNITED STATES OF AMERICA,        :

                                                   :        04 Cr. 1247 (PAC)
       - against -                        :        <u>OPINION & ORDER</u>
                                                   :

NATHANIEL DAMES                      :
                                                 :
                  Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Nathaniel Dames ("Dames") is charged with the killing of David Harris in furtherance of a conspiracy to distribute narcotics in violation of 21 U.S.C. § 848(e)(1)(A) and § 18 U.S.C. 924(j).  Dames now moves to preclude the testimony of Denise Hughes ("Hughes") from his trial based on alleged violations of the Jencks Act, 18 U.S.C. § 3500, and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Dames also moves <u>in limine</u> to preclude the Government from introducing a firearm found on the body of David Harris, Dames's alleged victim, after his death, and a firearm seized from an apartment allegedly used by Dames.  The Government in turn moves <u>in limine</u> to introduce evidence of prior arrests of Dames and his alleged co-conspirators, to preclude Dames from introducing evidence of any dismissal or acquittal of the charges stemming from those arrests, and to introduce various testimony under Federal Rules of Evidence 804(b)(3) and 801(d)(2)(E).

**DEFENDANT'S MOTION TO PRECLUDE HUGHES'S TESTIMONY**

**I. Background**

Hughes, now deceased, was deposed by the parties to preserve her testimony on September 23, 2005 and October 6, 2005.  Prior to the deposition, the

Defendant requested that the Government produce notes taken by Detective Stefano Braccini ("Det. Braccini") during an interview of Hughes conducted on August 12, 2004 (the "August 12 Notes"). The Government asserted that it had no such notes in its possession, and the deposition was conducted without such notes being produced. On March 21, 2007, the Government, having located the August 12 Notes, produced them to Defendant, who then brought this motion. On March 30, 2007, the Government also produced additional notes taken by Det. Braccini during an interview with Hughes conducted on August 26, 2004 (the "August 26 Notes"). On April 4, 2007, the Court ordered the Government to "submit all contemporaneous notes and official reports regarding New York Police Department interviews of Denise Hughes for in camera review." United States v. Dames, 04 Cr. 1247 (S.D.N.Y. April 4, 2007).

**II. The Jencks Act Claim**

The Jencks Act requires that the Government must produce any prior statements in its possession that were made by a Government witness and concern the subject matter of the witness's direct testimony. 18 U.S.C. § 3500(b). If the Government fails to carry out its obligations under the Jencks Act, the witness's testimony may be excluded under 18 U.S.C. § 3500(d). A statement under the Jencks Act may be a written statement "signed or otherwise adopted and approved by [the witness]" or a contemporaneous "substantially verbatim recital of an oral statement made by said witness." 18 U.S.C. 3500(e). A witness's statement is similarly defined by the Federal Rules of Criminal Procedure as, inter alia "a written statement that the witness makes and signs, or otherwise adopts and approves" or "a substantially verbatim,

2

contemporaneously recorded recital of the witness's oral statement…." Fed. R. Crim. P. 26.2(f).

Neither set of notes were made or signed by Hughes, nor has Dames presented any evidence that she "adopted or approved" them. Indeed, Hughes's testimony on cross-examination clearly implies that she never saw the notes or had them read to her. Deposition of Denise Hughes, September 23, 2005, 119-120; see Goldberg v. United States, 425 U.S. 94, 111 (1976) (the requirement that the notes be adopted or approved "clearly is not met when the lawyer does not read back, or the witness does not read, what the lawyer has written"). The sole basis for production of the notes is therefore that they were substantially verbatim recitals of the interviews with Hughes.

In Palermo v. United States, 360 U.S. 343 (1959), the Supreme Court held that statements which "contain the agent's interpretations or impressions," "evidence substantial selection of material," or "were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent," were not covered by the Jencks Act. Id. at 352-53. The Second Circuit has subsequently held that the central question is whether the relevant writing "could fairly be deemed to reflect fully and without distortion what had been said to the government agent." United States v. Scotti, 47 F.3d 1237, 1249 (2d Cir. 1995) (quoting Palermo, 306 U.S. at 352).

The Court's in camera review shows that August 12 Notes include three pages of fragmentary jottings that appear to convey the impressions of Det. Braccini. Only one brief paragraph uses a form that suggests it similar to the words actually spoken by Hughes, and there is at least one clear interpolation of Det. Braccini's own thoughts in the form of a "To Do" list. Accordingly, the August 12 Notes do not constitute a

3

statement under the Jencks Act, and the Government was not required to produce them to the Defendant.  See United States v. Lamma,  349 F.2d 338, 340 (2d Cir. 1965) (finding that notes were not substantially verbatim where they were "fragmentary," contained "no indication that they conform to [the witness's] language rather than that of the Assistant U.S. Attorney," and contained "several interpolations of the interviewer…."); United States v. Aviles, 315 F.2d 186, 191 (2d Cir. 1963) (same, where "the documents themselves indicate that they are the result of a process of selection," and "signs of addition and interpolation are evident on the face of the documents."); United States v. Sainato, 29 F.Supp.2d 116, 119 (E.D.N.Y. 1998) (same, where notes were "rough, choppy, disjointed, scattered jottings full of sentence fragments.").

The August 26 Notes are similarly fragmentary, are non-narrative, and clearly evidence substantial selection of material in the form of a number of names listed without explanation.  Therefore they are also beyond the scope of the Jencks Act.  See United States v. Mora, 994 F.2d 1129, 1139 (5th Cir. 1993) (notes that "consist of names of persons provided by [the witness]" and "are scattered jottings, not a formal memorandum or report" were not a substantially verbatim recital).  As neither the August 12 Notes nor the August 26 Notes constitute Hughes's prior statements under § 3500(e), Hughes's testimony cannot be precluded on the basis of the Jencks Act.[1]

---

[1] Even if the Notes qualified as Hughes's statements, the question of precluding her testimony would "depend[ ] in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other." United States v. Miranda, 526 F.2d 1319, 1324-1325 (2d Cir. 1975).  The Court need not make this determination given its § 3500(e) ruling, but were it necessary, it would find no prejudice to Dames from the Government's failure to provide the Notes prior to the cross-examination of Hughes.

**III. The Brady Claim**

Brady requires the Government to disclose exculpatory and impeachment material "that, if suppressed, would deprive the defendant of a fair trial." United States v. Bagley, 473 U.S. 667, 675 (1985). The defendant is deprived of a fair trial for Brady purposes "only where only where there is a reasonable probability that the government's suppression affected the outcome of the case, or where the suppressed evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)) (internal citations omitted). The nature of the Brady inquiry leaves it ill-suited to resolution before the trial is completed:

> Although the government's obligations under Brady may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty – and, concomitantly, the scope of a defendant's constitutional right – is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial.

Id. at 140. That the material at issue here would allegedly have been useful to impeach testimony which has already been completed does not alter this essential characteristic of a Brady violation. Ruling on the Brady issue is premature, and the Court must deny the Defendant's motion without prejudice to renewal of the Brady claim after the completion of trial.

**DEFENDANT'S MOTION TO EXCLUDE THE FIREARMS EVIDENCE**

Dames moves to exclude two firearms: (1) a revolver allegedly removed from Harris's person after his murder, which the Government contends Harris used to shoot Dames several weeks before; and (2) a MAK-90 discovered in an apartment on 124th Street in Manhattan allegedly used by Dames and others in connection with their

narcotics conspiracy.  Dames argues introduction of these firearms into evidence will result in unfair prejudice that outweighs their probative value, and thus they should be excluded from evidence under Fed. R. Evid. 403.  To the extent that the introduction of the revolver would prejudice Dames, it is because of its evidentiary value in showing a motive on his part to kill Harris.  It is highly probative, and any resulting prejudice is simply that which results from evidence of guilt of the crime charged, and which Rule 403 allows.  The MAK-90, by contrast, has little probative value, and the risk of unfair prejudice to the Defendant is obvious.  Rule 403 requires its exclusion.

## GOVERNMENT'S MOTIONS IN LIMINE

**A.  Prior Arrests of Dames and Co-Conspirators**

The Government moves in limine to admit testimony regarding the events surrounding the February 11, 1995 arrest of Dames and David Graves for distribution of crack cocaine, the December 9, 2004 arrest of Dames for criminal possession of crack cocaine, the February 26, 1994 arrest of Efrain Soler ("Soler") and Richard Davis for narcotics and gun possession, and the February 21, 1994 arrest of Soler and Edward Lemmon for crack cocaine distribution.[2]  The Government also moves to preclude the Defendant from eliciting evidence or putting before the jury the outcome of any of these cases not resulting in conviction.  The Court finds these matters admissible as probative of the underlying narcotics conspiracy that is a necessary element of both counts of the indictment.

---

[2] At the final pre-trial conference on April 13, 2007, the Government withdrew this motion as to a June 20, 1994 arrest of Dames for criminal trespass.

6

The Court also grants the Government's motion to exclude evidence or argument by counsel concerning the dismissal or acquittal of the charges brought in these cases. The fact of dismissal or acquittal of charges does not rebut testimony as to the underlying acts surrounding the arrests. United States v. Viserto, 596 F.2d 531, 537 (2d. Cir. 1979) ("a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted. Not only does the inference appellants suggest not flow from the judgment of acquittal of Solce, but also a judgment of acquittal is hearsay.") Such evidence is therefore irrelevant and is properly excluded. See id; see also United States v. Marrero-Ortiz, 160 F.3d 768, 775 (1st Cir. 1998); Prince v. Lockhard, 971 F.2d 118, 122 (8th Cir. 1992); United States v. Jones, 808 F.2d 561, 566 (7th Cir.1986).

**B. Statements of Co-Conspirators Against Penal Interest**

The Government seeks to introduce statements by Soler made to Andre Martin ("Martin"), an alleged associate of Dames's and Soler's, to the effect that Soler and Dames sold crack cocaine together, and employed violence and threats of violence in the course of this enterprise. The Government also seeks to introduce statements made by to Martin by David Mullins, another alleged Dames associate, regarding his retrieval of the murder weapon from the scene at Dames's behest. Both Soler and Mullins are deceased and therefore unavailable as a witness. The Government argues that these statements are admissible pursuant to Fed. R. Evid. 804(b)(3), permitting the introduction of hearsay statements which, at the time made, "so far tended to subject the declarant to…criminal liability…that a reasonable person would not have made the statement unless believing it to be true." In a criminal case, the Confrontation Clause of the Sixth

Amendment requires the additional showing that the statements bear "particularized guarantees of trustworthiness."

There is no question here that the statements are against penal interest. Soler's statements would have subjected him to a variety of potential criminal charges, while Martin's implicated him as an accomplice in murder. The Second Circuit has held that such statements that simultaneously inculpate the declarant and the defendant are admissible when made to an "ally," rather that a stranger or law enforcement official, and where there is no reason to suspect that the "inculpatory portion is any less trustworthy than the part of the statement that directly incriminates the declarant." United States v. Matthews, 20 F.3d 538, 546 (2d Cir. 1994). See also United States v. Saget, 377 F.3d 223, 230-31 (2d Cir. 2004). Based on the Government's representations, each declarant here was speaking to a criminal associate, and there is no reason to believe that the declarant was lying about Dames involvement, or trying to shift blame from himself to Dames. See United States v. Sasso, 59 F.3d 341, 349 (2d Cir. 1995). The statements are therefore admissible.

## C.  Statements of Co-Conspirators in Furtherance of Conspiracy

The Government seeks to introduce statements made by Peter Rollack ("Rollack") to Anthony Hardy ("Hardy") regarding Rollack's and Dames's attempt to locate and murder Harris after Harris shot Dames in March 1995. The Government offers this under Fed. R. Evid. 801(d)(2)(E), which treats as non-hearsay "a statement by a co-conspirator of a party during the course and in furtherance of a conspiracy." The Second Circuit has held that statements which "induce a co-conspirator's assistance," foster cohesiveness, or "inform [co-conspirators] as to the progress or status of the conspiracy"

8

fall under the Rule. United States v. Maldonado-Rivera, 922 F.2d 934, 959 (2d Cir. 1990).

Dames, Rollack, and Hardy are all alleged to be co-conspirators, and the shooting of Dames by Harris would obviously have been a significant event to the conspiracy. What steps, if any, were taken after that to punish the attack on a conspiracy member and to address Harris's alleged withholding of money and assistance from Dames would clearly be of substantial interest and importance. Rollack's statements therefore clearly served to inform Hardy of the status of the conspiracy, and to foster cohesiveness by "enforcing discipline" and "warn[ing] members of the [conspiracy] that a similar fate awaited those" who crossed Dames and his associates. United States v. Simmons, 923 F.2d 934, 945 (2d Cir. 1991). The statements are therefore admissible.[3]

Dated: New York, New York
April 13, 2007

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

---

[3] This ruling is naturally subject to the Government meeting its burden to show all prerequisites of admissibility by a preponderance of the evidence. The Court will make a specific ruling on this point once all evidence has been presented.